2026 ME 32

OPINION OF THE JUSTICES
OF THE SUPREME JUDICIAL COURT

GIVEN UNDER THE PROVISIONS OF
ARTICLE VI, SECTION 3 OF THE MAINE CONSTITUTION

Docket No. OJ-26-1

———————————————

QUESTIONS PROPOUNDED BY
THE MAINE LEGISLATURE

IN A JOINT ORDER

DATED FEBRUARY 10, 2026

ARGUED APRIL 1, 2026

ANSWERED APRIL 6, 2026

———————————————

QUESTION PROPOUNDED BY THE MAINE LEGISLATURE
IN A JOINT ORDER DATED FEBRUARY 10, 2026

**WHEREAS,** it appears to the 132nd Legislature that the following is an important question of law and that this is a solemn occasion; and

**WHEREAS,** the Constitution of Maine, Article VI, Section 3 provides for the Justices of the Supreme Judicial Court to render their opinion on such a question; and

**WHEREAS,** separate provisions of the Constitution of Maine, adopted at different times, provide that persons elected to the House of Representatives must be elected "by a plurality of all votes returned," Constitution of Maine, Article IV, Part First, Section 5; those elected to the Senate must be "by a plurality of the votes in each senatorial district" and the Senate determines "who is elected by a plurality of votes to be Senator in each district," Article IV, Part Second, Section 4 and Section 5; and those elected as Governor must be "by plurality of all of the votes returned," Article V, Part First, Section 3; and

**WHEREAS,** on November 8, 2016, the voters of Maine approved the use of ranked-choice voting in state elections, Initiated Bill 2015, chapter 3; and

**WHEREAS,** on May 23, 2017, the Justices of the Supreme Judicial Court answered questions in an advisory opinion regarding the constitutionality of ranked-choice voting in light of the plurality provisions of the Constitution of Maine, Article IV and Article V; and

**WHEREAS,** as a result of a people's veto of portions of Public Law 2017, chapter 316, the general and special elections for the offices of Governor, State Senator and State Representative were removed from the list of those offices to which ranked-choice voting applied; and

**WHEREAS,** starting with the June 12, 2018 primary elections, Maine has conducted numerous successful elections using ranked-choice voting, including primary and general elections in races for the United States House of Representatives and United States Senate and primary elections for the Maine House of Representatives, Maine Senate and Governor; and

**WHEREAS,** Maine has not used ranked-choice voting in general elections for state office, resulting in general election ballots containing both ranked-choice voting and conventional "first past the post" voting; and

**WHEREAS,** having 2 different election systems on a single ballot is potentially confusing and disruptive to the voting process; and

**WHEREAS,** in *Kohlhaas et al. v. State of Alaska, Office of Lieutenant Governor, Division of Elections*, 518 P.3d 1095 (Alaska 2022), in considering whether ranked-choice voting violates a provision of the Alaska Constitution requiring the person "receiving the greatest

2

number of votes" to be the governor, Alaska Constitution, Article III, §3, a requirement that is substantially similar to the requirements of the Constitution of Maine, the Alaska Supreme Court held that, because a candidate wins a plurality of the votes only after the final round of tabulation, Alaska's ranked-choice voting statute conformed with the Alaska Constitution's plurality provision; and

**WHEREAS,** in Advisory Opinion 2024-12, the Federal Election Commission concluded unequivocally "that the entire ranked-choice voting process, including all necessary rounds of vote tallying, . . . constitutes a single election" and recognized that, unlike traditional run-off elections, ranked-choice voting does not allow for any additional periods of campaigning and voting; and

**WHEREAS,** Legislative Document 1666, Senate Paper 660, An Act to Include in the Ranked-choice Election Method for General and Special Elections the Offices of Governor, State Senator and State Representative and to Make Other Related Changes, referred to in this order as "L.D. 1666," amends Maine's ranked-choice voting law to conform with the plurality election provisions of the Constitution of Maine and restores the use of ranked-choice voting for general elections for Governor, State Senator and State Representative; and

**WHEREAS,** on June 18, 2025, having been passed to be enacted by both the House of Representatives and the Senate, L.D. 1666 was presented to the Governor for her signature; and

**WHEREAS,** upon presentment of L.D. 1666 to the Governor, questions were raised regarding the application of the Constitution of Maine's plurality provisions to this legislation in light of recent legal precedent; and

**WHEREAS,** on June 25, 2025, the Senate recalled L.D. 1666 from the Governor's desk and then carried it over, in the same posture, to the next special or regular session of the 132nd Legislature, so that an answer to the constitutionality of L.D. 1666 could be obtained; and

**WHEREAS,** several candidates for Governor in the 2026 election have already registered their campaigns and begun their efforts while others are likely to enter the race before the end of the qualification period, all of whom would be affected by the manner in which the general election is conducted; and

**WHEREAS,** an answer to the constitutionality of L.D. 1666 is required before candidates, their supporters and the voting public begin engaging in earnest in the 2026 campaign; and

**WHEREAS,** if the ranked-choice method of voting, as amended by L.D. 1666, was applied to elections in 2026 without resolution of the constitutional question presented here, a candidate for Governor, State Senator or State Representative who achieved an apparent

plurality of the votes counted by city and town officials but failed to prevail in the subsequent round or rounds conducted under the supervision of the Secretary of State pursuant to ranked-choice voting could challenge that candidate's declared loss as a violation of the plurality vote requirement in the Constitution of Maine for the position sought by that candidate and thereby place the validity of the election into question and delay the seating of a Governor, State Senator or State Representative; and

**WHEREAS,** failing to address important and unresolved questions about the constitutionality of ranked-choice voting before the end of the current legislative session would potentially cause chaos and uncertainty in the races now beginning; and

**WHEREAS,** the Legislature requests guidance from the Justices of the Supreme Judicial Court as to the constitutionality of L.D. 1666 so that it may determine, during the Second Regular Session of the 132nd Legislature, whether it is necessary to propose constitutional amendments for submission to the voters for approval in order to implement ranked-choice voting for elections held thereafter; and

**WHEREAS,** it is vital that the Legislature be informed at the earliest possible date as to the opinions of the Justices of the Supreme Judicial Court on the question propounded in this order; now, therefore, be it

**ORDERED,** that, in accordance with the provisions of the Constitution of Maine, the Legislature respectfully requests the Justices of the Supreme Judicial Court to provide to the Legislature the Justices' opinion on the following question of law:

Question: Does the method of arriving at a plurality of votes cast through the use of ranked-choice voting, as amended by L.D. 1666, in which a person's vote is not determined until the final round of tabulation and in which the candidate with the highest continuing ranking on the most ballots after the final round of tabulation is determined to have received a plurality of votes cast, conform with the provisions of the Constitution of Maine, Article IV, Part First, Section 5; Article IV, Part Second, Section 4 and Section 5; and Article V, Part First, Section 3?

**SPONSORED BY: _____/s/_____**

**(Senator RENY, C.)**

**COUNTY: Lincoln**

OPINION OF THE JUSTICES

To the Maine Legislature:

[¶1] By joint order, S.P. 900 (132d Legis. 2026), the Legislature has asked each of us, as individual Justices of the Maine Supreme Judicial Court, *see* Me. Const. art. VI, § 3, to opine on whether proposed legislation to institute ranked-choice voting for the offices of State Representative, State Senator, and Governor, *see* L.D. 1666 (132d Legis. 2025), *amended by* Comm. Amend. B to L.D. 1666, No. S-499 (132d Legis. 2026), conforms with the requirement of the Maine Constitution that the winners of elections for those offices be determined by a plurality of votes, *see* Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 4-5; Me. Const. art. V, pt. 1, § 3. We provide the following response, in which all Justices concur, and conclude that L.D. 1666, if enacted, would violate the Maine Constitution.

## I. BACKGROUND

[¶2] In November 2016 Maine voters approved, through a citizen initiative, "An Act to Establish Ranked-choice Voting." *See Opinion of the Justices*, 2017 ME 100, ¶ 3 & n.2, 162 A.3d 188. The Act "established ranked-choice voting for elections of United States Senators, United States Representatives, Governor, State Senators, State Representatives, and federal

and state primaries in Maine occurring on or after January 1, 2018." *Id.* ¶ 3; *see* 21-A M.R.S. § 1(27-C) (2025).

[¶3] In February 2017, the Maine Senate propounded questions to the sitting Justices concerning the constitutionality of that legislation, and the Justices responded that "the Ranked-Choice Voting Act conflicts with the Maine Constitution" in elections for State Representatives, State Senators, and Governor.[1] *Opinion of the Justices*, 2017 ME 100, ¶ 72, 162 A.3d 188. The Legislature, in November 2017, enacted legislation implementing ranked-choice voting for primaries for State Senators and Representatives, United States Senators and Representatives, and Governor, and for elections of United States Senators and Representatives. *See* P.L. 2017, ch. 316, § 1. It also included ranked-choice voting for the offices of State Senator, State Representative, and Governor. *Id.* It provided, however, that the law would apply only to elections held after December 1, 2021, and that the ranked-choice-voting statutes would be repealed on December 1, 2021, absent a constitutional amendment. *See id.* §§ 1-3, 6, 11-12, 14.

---

[1] The Justices there declined to answer some of the propounded questions, including the question "Does the Act's requirement that the Secretary of State count the votes centrally in multiple rounds conflict with the provisions of the Constitution of Maine that require that the city and town officials sort, count, declare and record the votes in elections for Representative, Senator and Governor as provided in the Constitution of Maine, Article IV, Part First, Section 5, Article IV, Part Second, Section 3 and Article V, Part First, Section 3?" *Opinion of the Justices*, 2017 ME 100, ¶ 71, 162 A.3d 188, 196, 212.

6

[¶4]   Through a people's veto referendum, *see* Me. Const. art. IV, pt. 3, § 17, the people of Maine voted on June 12, 2018,[2] to reject the language calling for ranked-choice voting for elections to the offices of State Senator, State Representative, and Governor and the language delaying the effective date and contingently repealing the statutes.  Secretary of State, *Maine Citizen's Guide to the Special Referendum Election Tuesday, June 12, 2018*, https://www.maine.gov/sos/sites/maine.gov.sos/files/content/assets/guide 618.pdf [https://perma.cc/E5DD-UFAE].   Effective in 2020, the Legislature added both general elections for presidential electors and presidential primaries to the list of elections to be decided by ranked-choice voting. P.L. 2019, ch. 539, §§ 1, 2 (effective June 16, 2020).  Ranked-choice voting is thus now in effect for primaries, for elections for presidential electors, and for elections for the federal offices of United States Senator and Representative to Congress.  *See* 21-A M.R.S. § 1(27-C)(A), (B), (D), (E).

[¶5]   The Legislature now seeks our opinions on the constitutionality of L.D. 1666, legislation that passed in both houses and was presented to the

---

[2]   After litigation between the State Senate and the Secretary of State, ranked-choice voting was ordered implemented for the June 12, 2018, primary election. *Maine Senate v. Sec'y of State*, 2018 ME 52, ¶ 35, 183 A.3d 749.  The pending people's veto had resulted in the suspension of the provisions that would have delayed the implementation of ranked-choice voting. *See id.* ¶ 19 (citing Me. Const. art. IV, pt. 3, § 17(2)).

Governor for her signature on June 18, 2025. That legislation responds to the constitutional infirmity of using ranked-choice voting in general elections for the offices of State Representative, State Senator, and Governor. Because the Governor questioned the constitutionality of the legislation, on June 25, 2025, the Senate recalled L.D. 1666 from the Governor's desk and carried it over to the next legislative session so that, upon joint order of the House of Representatives and Senate, we could address its constitutionality.

[¶6] We received the question on February 10, 2026, and issued a procedural order the next day. We invited briefs from the Senate, the House of Representatives, the Governor, the Secretary of State, the Attorney General, and any other interested person or entity to address (1) "whether the question propounded presents a 'solemn occasion,' pursuant to article VI, section 3 of the Maine Constitution" and (2) "the law regarding the question propounded."[3]

[¶7] The Deputy Secretary of State filed a brief that takes no position on whether the propounded question presents a solemn occasion or on the

---

[3] We received briefs from the Senate President and Speaker of the House; the Attorney General; the Deputy Secretary of State; Maine voters Cara Ryan, Peter Sly, Alison Smith, Anna Kellar, and Alex Newell Taylor; Cabanne Howard, Esq.; Marshall J. Tinkle, Esq.; Professor Richard H. Pildes and G. Michael Parsons, Esq.; Professor Dmitry Bam; the League of Women Voters of Maine; the Republican National Committee; and FairVote and the Maine Women's Lobby. We also authorized responsive briefing and received responsive briefs from the Senate President and Speaker of the House; the Attorney General; the League of Women Voters of Maine; the Republican National Committee; and FairVote and the Maine Women's Lobby.

constitutionality of the legislation but indicates her office's capacity to effectuate the bill's requirements for the next general election should the bill take effect. All briefs that address whether the propounded question presents a solemn occasion agree that it does.[4] The Attorney General and the Republican National Committee argue that the legislation would, if enacted, violate the Maine Constitution. All other briefs argue that the legislation conforms with the requirements of the Maine Constitution.

[¶8] We heard oral arguments from counsel for the Senate President and Speaker of the House, the Attorney General, the League of Women Voters of Maine, and the Republican National Committee on April 1, 2026, and now issue the following opinion of all Justices.

## II. DISCUSSION

[¶9] We begin by considering whether the propounded question presents a solemn occasion of live gravity; we conclude that it does. We then answer the question and opine that the proposed legislation would, if enacted, violate the Maine Constitution's provisions for the election of State Representatives, State Senators, and the Governor by a plurality of all votes.

---

[4] The briefs of FairVote and the Maine Women's Lobby; the five individual voters; Howard; Pildes and Parsons; and Bam provide no argument on the issue of whether the question presents a solemn occasion. Tinkle indicates, without developed argument, that he assumes we will conclude that the question presents a solemn occasion.

## A.    Solemn Occasion

[¶10]  "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." Me. Const. art. VI, § 3.  To determine whether a "solemn occasion" exists, we consider several judicial guideposts. *Opinion of the Justices*, 2017 ME 100, ¶ 21, 162 A.3d 188.  We respond to inquiries when there is an unusual exigency regarding a question of live gravity and another branch of government requires an answer to a question that is not tentative, hypothetical, or remote, the answer to which will provide specific assistance to the branch of government submitting the request and will aid the general public. *Id.* ¶¶ 21-26, 28-30.  We are unlikely to answer a question that is overly complex or that can be properly addressed through ordinary litigation. *See id.* ¶¶ 27-28.

[¶11]  We conclude, as the Justices did in 2017, *see id.* ¶¶ 39-55, that a solemn occasion exists.  The Legislature has passed legislation that would be in effect for the next election if signed by the Governor, but the Governor and the Legislature have doubts about the constitutionality of the legislation.  The Legislature is expected to adjourn its second regular session by or about April 15, 2026. *See* 3 M.R.S. § 2 (2025).  The Deputy Secretary of State has stated

that her office must begin designing a suitable ballot by August 25, 2026, for the November elections. Thus, there is an unusual exigency to the question propounded. *See Opinion of the Justices*, 2017 ME 100, ¶ 22, 162 A.3d 188. The Legislature has presented a concrete question of live gravity that is not overly complex or subject to ordinary litigation processes. *See id.* ¶¶ 23-25, 27-28, 30. Our answer will provide specific assistance to the Legislature in deciding whether to present the bill to the Governor during the present session, in time to be enacted and implemented for the upcoming election if the Governor signs it into law. *See id.* ¶¶ 22, 24-26.

[¶12] In determining that the question presents a solemn occasion, we acknowledge that in 2018, the Law Court adopted the reasoning of the Justices' 2017 advisory opinion verbatim when opining that "determining the winner of an election through plurality voting is inconsistent with determining the winner through a ranked-choice voting process." *Maine Senate v. Sec'y of State*, 2018 ME 52, ¶ 19 & n.12, 183 A.3d 749; *see Opinion of the Justices*, 2017 ME 100, ¶¶ 64-69, 162 A.3d 188. Because the procedure set forth in L.D. 1666 differs in some ways from the ranked-choice-voting process then under consideration, we do not consider the Law Court opinion to have resolved the question

propounded by the Legislature in February. Thus, we proceed to address the constitutional question that the Legislature has raised.

**B.      Opinion on the Constitutionality of L.D. 1666**

[¶13]  "Advisory Opinions represent the advice of the individual Justices. They are not binding on the Justices individually or together in any subsequent case that may come before the Law Court and they have no precedential value or conclusive effect." *Opinion of the Justices*, 2017 ME 100, ¶ 9, 162 A.3d 188 (citations omitted); *see* Me. Const. art. VI, § 3. In 2017, all Justices of this Court concluded that the ranked-choice-voting statute proposed at that time was unconstitutional when applied to the state offices at issue. *Opinion of the Justices*, 2017 ME 100, ¶ 72, 162 A.3d 188. We are not bound by that Opinion, although we may find that analysis persuasive in considering the legislation before us today. We here provide guidance and our legal analysis to the Legislature for its use in decision-making and action. *See id.* ¶ 9; Me. Const. art. VI, § 3.

[¶14]  Subject to some exceptions not relevant here, the Legislature has the "full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution . . . ."  Me. Const. art. IV, pt. 3, § 1. Thus, we operate from a

presumption of legislation's constitutionality, *see State v. McGillicuddy*, 646 A.2d 354, 355 (Me. 1994); *Opinion of the Justices*, 623 A.2d 1258, 1262 (Me. 1993), and resolve all reasonable doubts in favor of the statute's constitutionality, *Parker v. Dep't of Inland Fisheries & Wildlife*, 2024 ME 22, ¶ 18, 314 A.3d 208. Only if there are "strong and convincing reasons that it conflicts with the Constitution" will we conclude that a statute is unconstitutional. *McGillicuddy*, 646 A.2d at 355 (quotation marks omitted); *Opinion of the Justices,* 623 A.2d at 1262 (quotation marks omitted). "The party challenging the statute bears the burden of overcoming the presumption of constitutionality," *McGillicuddy*, 646 A.2d at 355, and a facial challenge to a statute will succeed only if a party "demonstrate[s] that no set of circumstances exists under which the [statute] would be valid," *In re Weapons Restriction of J.*, 2022 ME 34, ¶ 12, 276 A.3d 510 (quotation marks omitted).

[¶15] "To determine whether the Maine Constitution and a Maine statute conflict, we look primarily to the plain language of both." *Parker*, 2024 ME 22, ¶ 18, 314 A.3d 208; *see Opinion of the Justices*, 2017 ME 100, ¶ 58, 162 A.3d 188. Although L.D. 1666 is similar to legislation proposed in 2017, it employs new language that (1) describes a ranked-choice ballot as containing "an instruction from the voter on the relative order in which the voter intends the ballot to be

tabulated in the election for that office," rather than as a set of votes in the alternative; (2) refers to a "ranking" on a ballot rather than a "vote"; (3) indicates that a candidate is "eliminated" at the end of a round rather than being "removed from consideration"; and (4) refers to a "tabulation," not a "count" or "voting count," with that tabulation proceeding in rounds and culminating in a final, single vote cast for the "highest-ranked continuing candidate" who was not eliminated during rounds of "tabulation." L.D. 1666 (132d Legis. 2025), *amended by* Comm. Amend. B to L.D. 1666, No. S-499 (132d Legis. 2026). It provides explicitly that "[f]or an election determined by ranked-choice voting, the person who receives a *plurality of the votes cast*" is determined in accordance with the prescribed process for sequentially tabulating voter "rankings." *See* L.D. 1666, §§ 6, 7, 10 (132d Legis. 2025) (emphasis added); Comm. Amend. B to L.D. 1666, No. S-499 (132d Legis. 2026).

[¶16] The proponents of L.D. 1666 contend that the Constitution's requirement of election by a plurality of votes does not constrain the Legislature from legislating *how* that plurality is determined. They posit that because L.D. 1666 allows for elections by a plurality, it comports with the Maine Constitution and is a different and more effective way for voters to cast votes in accordance with their intent. They urge us to follow the Alaska Supreme

14

Court's reasoning in *Kohlhaas v. State*, 518 P.3d 1095 (Alaska 2022), and argue that a ranked-choice ballot is consistent with a constitutional provision establishing that the person who receives the most votes is the winner of an election.

[¶17]  In construing the plain language of the Constitution as it pertains to elections, "we interpret the Constitution's words in light of what meaning they would convey to an intelligent, careful voter."  *Payne v. Sec'y of State*, 2020 ME 110, ¶ 18, 237 A.3d 870 (quotation marks omitted).  If the constitutional text does not provide a definitive answer, we may also examine, to the extent relevant, "the general purpose of the provision at issue, its historical context, any related statutes, and the common law, together with sociological and economic considerations and relevant precedent from other jurisdictions."  *State v. McLain*, 2025 ME 87, ¶ 30, 345 A.3d 141.  We thus begin by reviewing the constitutional text, examining the language in context and reading it in harmony with the Constitution as a whole.  *See id.*; *Opinion of the Justices*, 2023 ME 34, ¶ 22, 295 A.3d 1212; *Avangrid Networks, Inc. v. Sec'y of State*, 2020 ME 109, ¶ 27, 237 A.3d 882.

[¶18]  The Maine Constitution provides for election by "a plurality" of the "votes" for the offices of State Representative, State Senator, and Governor.

*See* Me. Const. art. IV, pt. 1, § 5 (providing for election of a State Representative "by a plurality of all votes returned" in the representative district); Me Const. art. IV, pt. 2, §§ 4-5 (providing for election of a State Senator by "a plurality of the votes in each senatorial district"); Me. Const. art. V, pt. 1, § 3 (providing for election of the Governor "by a plurality of all of the votes returned"). Although the Constitution does not define the term "vote," the meaning of the term is made plain by the constitutional language explaining how votes are sorted, counted, declared, and listed for review by the Secretary of State and the Governor. *See* Me. Const. art. IV, pt. 1, § 5; Me Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.

[¶19]  For purposes of electing State Representatives, "the election officials of the various towns and cities . . . receive the *votes* of all the qualified electors" and "sort, count and declare them in open meeting." Me. Const. art. IV, pt. 1, § 5 (emphasis added). After that, "a list of the persons voted for shall be formed, with the number of *votes* for each person against that person's name." *Id.* (emphasis added). "Cities and towns belonging to any Representative District shall hold their meetings at the same time in the respective cities and towns; and such meetings shall be notified, held and regulated, the *votes* received, sorted, counted and declared in the same manner." *Id.* (emphasis

16

added). "Fair copies of the *lists of votes* shall be attested by the municipal officers and the clerks of the cities and towns and the city and town clerks respectively shall cause *the same* to be delivered into the office of the Secretary of State forthwith." *Id.* (emphasis added). The Governor will then "examine the returned copies of *such lists* and 7 days before the first Wednesday of December biennially, shall issue a summons to such persons as shall appear to have been elected by a plurality of all *votes* returned, to attend and take their seats." *Id.* (emphasis added).

[¶20] Meetings to elect Senators are "held and regulated and the *votes* received, sorted, counted, declared and recorded, in the same manner as those for Representatives." Me. Cont. art. IV, pt. 2, § 3 (emphasis added). "Fair copies of the *lists of votes* shall be attested by the clerks of the cities and towns or other duly authorized officials and sealed up in open meetings and such officials shall cause *said lists* to be delivered into the office of the Secretary of State forthwith." *Id.* (emphasis added). The Governor will then "examine the copies of such *lists*, and at least 7 days before the said first Wednesday of December, issue a summons to such persons, as shall appear to be elected by a plurality of the *votes* in each senatorial district, to attend that day and take their seats." Me. Const. art. IV, pt. 2, § 4 (emphasis added). Finally, "[t]he Senate shall, on

said first Wednesday of December, biennially determine who is elected by a plurality of *votes* to be Senator in each district." Me. Const. art. IV, pt. 2, § 5 (emphasis added).

[¶21] For the office of Governor, the Constitution provides that "*votes* shall be received, sorted, counted and declared and recorded, in the same manner as those for Senators and Representatives." Me. Const. art. V, pt. 1, § 3 (emphasis added). "Copies of *lists of votes* shall be sealed and returned to the secretary's office in the same manner and at the same time as those for Senators." *Id.* (emphasis added). The Secretary of State must then at a specified time "lay *the lists returned* to the secretary's office before the Senate and House of Representatives to be by them examined, together with the ballots cast if they so elect, and they shall determine the number of *votes* duly cast for the office of Governor, and in case of a choice by plurality of all of the *votes* returned they shall declare and publish the same." *Id.* (emphasis added).

[¶22] These provisions of the Maine Constitution make clear that when the Constitution speaks of "votes," it refers to the votes recorded on ballots and conveyed by the towns and cities in lists, tallied by candidate, to the Secretary of State. *See* Me. Const. art. IV, pt. 1, § 5; Me Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3. The list of votes is the through-line at every stage of the process.

18

For the offices of Representative and Senator, the municipalities prepare lists from the votes that were sorted, counted, and declared. *See* Me. Const. art. IV, pt. 1, § 5; Me Const. art. IV, pt. 2, § 3. The lists are attested by the municipal officers and clerks, delivered to the Secretary of State, and examined by the Governor. Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-4. It is from those same lists that the Governor determines "such persons as shall appear to have been elected by a plurality of all votes returned." Me. Const. art. IV, pt. 1, § 5; *see* Me Const. art. IV, pt. 2, § 4. For the office of Governor, each municipality prepares a list from the votes that were sorted, counted, and declared. Me. Const. art. V, pt. 1, § 3. The municipalities' lists are attested by the municipal officers and clerks and delivered to the Secretary of State, to give to the Senate and House of Representatives, which determine from the lists "the number of votes duly cast" for each candidate and "in case of a choice by plurality of all of the votes returned," declare the winner.[5] *Id.*; *see also* Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-5. L.D. 1666's conception of a vote as being a series of instructions or rankings that when tabulated pursuant to a ranked-choice process leads to an eventual final vote is inconsistent with the

---

[5] It was argued that the processes outlined in these sections are, in fact, no longer followed precisely. But that is beside the point in examining the question before us, which is whether a plurality of the initial votes counted and recorded by the municipalities determines the winner.

constitutional concept of a "vote." Under the Constitution, for each of the offices at issue here, a single vote is taken from each voter, with the votes sorted, counted, and declared once and then submitted by each municipality to the Secretary of State. *See* Me. Const. art. IV, pt. 1, § 5; Me Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.

[¶23] In contrast to this concept of a vote, the existing statute governing the preparation of election returns provides, "For elections determined by ranked-choice voting, the warden shall report on the election return only the *first choice votes* cast." 21-A M.R.S. § 711 (2025) (emphasis added). The current rules of the Secretary of State, adopted under 21-A M.R.S. § 723-A(5-A) (2025), provide that the Secretary of State—not municipal election officials— supervises additional rounds of counting after municipalities submit lists of "first choice votes" cast for candidates. *See* 29-250 C.M.R. ch. 535, §§ 4-6 (effective Nov. 7, 2018). The rules provide for the Secretary of State to "report the statewide ranked-choice result to the Governor and . . . publish the results on the Department[ of the Secretary of State]'s public website along with the complete digital cast vote record, as soon as possible after completing the [ranked-choice-voting] count." *Id.* § 6(4). This process—and indeed any process that proceeds beyond the initial determination of a plurality based on

20

the vote lists from municipal officials—is inconsistent with the Maine Constitution's meaning of a "vote" for a State Representative, State Senator, or the Governor.[6]  *See* Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.

[¶24]  Although the Maine Constitution provides that "[t]he Legislature may by law authorize the dividing of towns into voting districts for all state and national elections, and prescribe the manner in which the votes shall be received, counted, and the result of the election declared," Me. Const. art. IX, § 12, *see* 21-A M.R.S. §§ 631, 695 (2025), it does not authorize the Legislature to redefine a vote under article IV, part 1, section 5; article IV, part 2, sections 3 to 5; and article V, part 1, section 3.[7]

[¶25]  Viewed in context, the provisions requiring election by a plurality of votes do not allow for the counting of additional votes, or "tabulations," based

---

[6] Municipalities could submit more detailed information to the Secretary of State in the lists they provide, but that is beside the point.  The Maine Constitution, construed as a whole, treats a "vote" as a single choice, tallied by a municipality and conveyed to the Secretary of State, and a plurality of those votes—without additional rounds of counting or tabulation—determines the winner of an election for State Representative, State Senator, or Governor.

[7] We note as well that the centralized counting of the absentee ballots of uniformed service voters and overseas voters is exceptional under Maine's Constitution and statutes, *see* Me. Const. art. II, § 4; 21-A M.R.S. § 783(3) (2025), and does not redefine a "vote."  Similarly, there is an express authorization for the use of "[v]oting machines, or other mechanical devices for voting, . . . under such regulations as may be prescribed by law."  Me. Const. art. II, § 5; *see* 21-A M.R.S. §§ 808-861 (2025).  Those regulations, permissible as a result of amendments to Maine's Constitution, are nonetheless constrained from redefining a "vote."

on "instruction from the voter." L.D. 1666 (132d Legis. 2025), *amended by* Comm. Amend. B to L.D. 1666, No. S-499 (132d Legis. 2026). The proposed legislation is thus contrary to the Constitution.

[¶26] Several parties direct our attention to an opinion of the Supreme Court of Alaska in which that court held that ranked-choice-voting legislation did not violate the Alaska Constitution's provision that "[t]he candidate receiving the greatest number of votes shall be governor." Alaska Const. art. III, § 3; *see Kohlhaas*, 518 P.3d at 1118-23. The Alaska Supreme Court specifically disagreed with the Maine 2017 *Opinion of the Justices*, stating that the Justices did not "explain why [Maine's] constitution required the election to be called after 'one round of counting,'" and posited that "[w]ith ranked-choice voting, the vote count is not final after the first round of tabulation." *Kohlhaas*, 518 P.3d at 1121. The Alaska court reasoned that Maine's Justices had "treated the result obtained after the first round of counting as if it were final, without pointing to any text in its constitution that requires votes to be counted in that way or that limits the way a vote can be cast or expressed." *Id.* It faulted the Justices for not explaining, given the history surrounding the plurality provisions in the Maine Constitution, "how ranked-choice voting is any more likely to result in a failed election than single-choice voting." *Id.*

22

[¶27]  We are not persuaded by the Alaska court's reasoning, largely because, as the Justices—including one of us—concluded in 2017, the tabulation of votes in rounds is not "simply another method of carrying out the Constitution's requirement of a plurality." *Opinion of the Justices*, 2017 ME 100, ¶¶ 65-66, 162 A.3d 188.  Unlike the Alaska Constitution, which delegates broad authority to Alaska's Legislature to oversee elections and does not specify the way in which votes are cast, sorted, counted, and declared, *see* Alaska Const. art. II, § 3; Alaska Const. art. III, § 3; Alaska Const. art. V, §§ 3-5, the Maine Constitution provides significant detail about what it means to cast a vote that we simply cannot ignore, Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.  Although the Alaska Supreme Court faults the Justices for failing "to pinpoint constitutional text, structure, or policies inconsistent with ranked-choice voting," *Kohlhaas*, 518 P.3d at 1121, it is the Alaska Supreme Court that has overlooked the significant constitutional provisions in Maine that require us to do more than construe bare terminology in isolation; the Maine Constitution, viewed as a harmonious whole, informs us that a vote is cast and counted in a single round, Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.

[¶28] Although we resolve this issue based on the language of the Constitution, the history of the constitutional provisions requiring election by a plurality of votes in Maine—summarized in the 2017 *Opinion of the Justices*—also supports our conclusion. 2017 ME 100, ¶¶ 61-63, 162 A.3d 188. Because of the provisions in the 1820 Maine Constitution requiring a majority vote, several elections between 1830 and 1880 yielded no winner. *Id.* ¶¶ 61-62. Those races were decided by the alternative means for deciding elections that the Maine Constitution provided for at that time.[8] *Id.* ¶ 62.

[¶29] The people of Maine were strongly dissatisfied with these alternative means because of the expense and delay that they caused, because of the election of officials by Legislators instead of by the people, and because of claims of manipulation and self-dealing by the ultimate winners. *Id.* ¶ 63; Tinkle, *The Maine State Constitution* 12 (2d ed. 2013). These serious problems led to the amendment of the Maine Constitution to provide for all three offices to be elected by a plurality of votes and to eliminate the alternatives to a majority vote previously included in the Constitution. *See* Resolves 1864,

---

[8] For Representatives, new elections were held until a majority winner could be declared. *Opinion of the Justices*, 2017 ME 100, ¶ 62, 162 A.3d 188 (citing Me. Const. art. IV, pt. 1, § 5 (1820)). For Senators, the Legislators who had been elected by a majority elected the winners by joint ballot. *Id.* (citing Me. Const. art. IV, pt. 2, § 5 (1820)). For the Governor, the House selected—from the four candidates who received the most votes—two candidates, and the Senate elected the winner of those two. *Id.* (citing Me. Cont. art. V, pt. 1, § 3 (1820)).

ch. 344 (Representatives); Resolves 1875, ch. 98 (Senators); Resolves 1880, ch. 159 (Governor).[9]    Nowhere in this history was ranked-choice voting considered; at the time of these amendments to establish winners by a plurality of votes, voting by a plurality was not understood to mean anything other than that the person receiving the most votes was the winner of an election.    The amendments to require a "plurality" did not change what constitutes a vote under the Maine Constitution and did not endorse a runoff, whether effectuated through a separate election or a tabulation of ranked-choice ballots' sequential preferences, *see* Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, §§ 3-5; Me. Const. art. V, pt. 1, § 3.  Rather, the Maine Constitution clearly establishes that the winner is "the first to pass the post" in the election.

[¶30]  Because of the Maine Constitution's language, there are strong and convincing reasons that L.D. 1666 is unconstitutional, and we conclude that the presumption of constitutionality has been overcome.  *McGillicuddy*, 646 A.2d at 355; *Opinion of the Justices*, 623 A.2d at 1262.

### III.  CONCLUSION

[¶31]  We recognize that the Maine voters expressed their will, through both their 2016 vote and their elected officials' passage of L.D. 1666, to employ

---

  9  There is, however, a legislative process to decide an election in which each of the top two candidates for Governor receives the same number of votes.  *See* Me. Const. art. V, pt. 1, § 3.

ranked-choice voting in elections for State Senators, State Representatives, and Governor. We emphasize that this opinion does not reflect or turn on the wisdom of that choice but rather rests on fundamental constitutional principles. Legislation passed by a simple majority in each house or passed through direct initiative expresses the will of the people. But the Constitution itself also expresses the will of the people and requires a two-thirds vote of both houses and a majority of the electors—rather than a simple majority in each house or a simple majority of the electors—to amend the Constitution. *See* Me. Const. art. X, § 4;[10] *Baxter v. Waterville Sewerage Dist.*, 146 Me. 211, 215, 79 A.2d 585, 588 (1951) ("The people of the State of Maine in creating, by the State constitution, the legislative department of government, conferred upon it the whole of their sovereign power of legislation, except in so far as they delegated some of this power to the Congress of the United States, and *except in so far as*

---

[10] Article X, section 4 provides,

> The Legislature, whenever 2/3 of both Houses shall deem it necessary, may propose amendments to this Constitution; and when any amendments shall be so agreed upon, a resolution shall be passed and sent to the selectmen of the several towns, and the assessors of the several plantations, empowering and directing them to notify the inhabitants of their respective towns and plantations, in the manner prescribed by law, at the next biennial meetings in the month of November, or to meet in the manner prescribed by law for calling and holding biennial meetings of said inhabitants for the election of Senators and Representatives, on the Tuesday following the first Monday of November following the passage of said resolve, to give in their votes on the question, whether such amendment shall be made; and if it shall appear that a majority of the inhabitants voting on the question are in favor of such amendment, it shall become a part of this Constitution.

*they imposed restrictions on themselves, by their own constitution, and fixed limits upon the legislative authority*." (emphasis added)); *Ace Tire Co. v. Mun. Officers of Waterville*, 302 A.2d 90, 96 (Me. 1973) (acknowledging the framers' recognition that "the legislative power is plenary except as it may have been circumscribed expressly or inferentially by the constitution of the state or nation"); *Opinion of the Justices*, 261 A.2d 53, 57 (Me. 1970) ("In proposing a constitutional amendment the Legislature is not exercising its power to make laws. It is acting as a special organ of Government for the purpose of initiating a constitutional amendment.").

[¶32] We have weighed the various arguments and considerations presented. Based on the language and structure of the Constitution itself, we conclude that L.D. 1666, like the legislation upon which the Justices opined in 2017, would, if enacted, violate the Maine Constitution. Thus, we answer the Legislature's question in the negative as follows:

L.D. 1666 would not, if enacted, conform with article IV, part 1, section 5; article IV, part 2, sections 3 to 5; and article V, part 1, section 3 of the Maine Constitution.

Dated:  April 6, 2026

/s/
Valerie Stanfill
Chief Justice

/s/
Andrew M. Mead

/s/
Catherine R. Connors

/s/
Rick E. Lawrence

/s/
Wayne R. Douglas

/s/
Julia M. Lipez
Associate Justices

**ADDITIONAL STATEMENT**

Consistent with past practice, it is our opinion that article VI, section 3 places an unqualified obligation on each of the Justices of the Supreme Judicial Court to give an opinion on the important question of law now propounded by the House and Senate upon this solemn occasion.  *See Opinion of the Justices,*

601 A.2d 610, 620 (Me. 1991) (additional statement of McKusick, C.J.).  Thus, notwithstanding any circumstances that could affect our decisions to make disclosures or consider recusal in an ordinary case, we join the other Justices in the answer above.

/s/
Catherine R. Connors

/s/
Rick E. Lawrence

Associate Justices

Peter J. Brann, Esq. (orally), and Michael E. Carey, Esq., Brann & Isaacson, Lewiston, for the Maine State Senate President and the Maine State Speaker of the House

Aaron M. Frey, Attorney General, Thomas A. Knowlton, Dep. Atty. Gen., and Jonathan R. Bolton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for the Attorney General

Aaron Frey, Attorney General, and Jason Anton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for the Deputy Secretary of State

Peter L. Murray, Esq., Sean R. Turley, Esq., and Meredith K. Cook, Esq., Murray, Plumb & Murray, Portland, for Cara Ryan, Peter Sly, Alison Smith, Anna Kellar, and Alex Newell Taylor

Cabanne Howard, Esq., pro se

Marshall J. Tinkle, Esq., pro se

John Brautigam, Esq., John Brautigam Esq. LLC, Falmouth, for Professor Richard H. Pildes and G. Michael Parsons, Esq.

Professor Dmitry Bam, University of Maine School of Law, pro se

David M. Kallin, Esq. (orally), Oliver Mac Walton, Esq., and Melissa A. Hewey, Esq., Drummond Woodsum & MacMahon, Portland, for the League of Women Voters of Maine

Timothy C. Woodcock, Esq. (orally), Katahdin Law LLC, Bangor, for the Republican National Committee, joined by the House and Senate Republican Caucuses and the Maine Republican Party

Benjamin Gaines, Esq., Gaines Law, LLC, Brunswick, for FairVote and the Maine Women's Lobby